## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ———————————————————— ) | |
| RICHARD LANE, RICHARD PALMER, ) | |
| and LEA SUTHERLAND-DOANE as ) | |
| ADMIN. ESTATE OF DAVID SUTHERLAND, ) | |
| ) | Civil Action |
| Plaintiffs, ) | No. 17-12356-PBS |
| ) | |
| v. ) | |
| ) | |
| PHILIP POWELL and F/V FOXY LADY, ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | |

### MEMORANDUM AND ORDER

June 19, 2020

Saris, D.J.

### INTRODUCTION

This contentious maritime case involves the sinking of the fishing vessel Orin C on December 5, 2015. Defendants seek to enforce a settlement they assert was reached through an email exchange between counsel. Plaintiffs oppose on the ground that material terms, namely the scope of and parties to the agreement's release of claims, were never agreed upon.

Neither party requested an evidentiary hearing. After a non-evidentiary hearing, based on the undisputed emails in the record, the Court **ALLOWS** Defendants' motion to enforce the settlement [Docket No. 144].

**FACTUAL BACKGROUND**

Plaintiffs filed this maritime wrongful death and personal injury action on November 30, 2017 against the United States Coast Guard, the fishing vessel Foxy Lady, and the Foxy Lady's captain, Philip Powell. The United States was later dismissed based on sovereign immunity. The Court assumes familiarity with its summary judgment order, Lane v. United States, No. CV 17-12356-PBS, 2020 WL 1427419 (D. Mass. Mar. 24, 2020), and does not recount the case's factual background.

The current dispute centers on whether the remaining parties reached a binding settlement agreement by email on May 14, 2020. The parties have each submitted a series of emails between counsel from late April through late May. At the time, several motions were pending before this Court, including Plaintiffs' motion for sanctions [Docket No. 118]. The extensive briefing on that motion was heated, with counsel accusing one another, the parties, and non-parties like Defendants' insurer (the Massachusetts Lobstermen's Association or "MLA") and Plaintiffs' expert of unlawful conduct, including defamation and criminal witness intimidation. See, e.g., Dkt. No. 118 at 3 (requesting referral by the Court "to the Department of Justice for investigation of the violations of various criminal statutes"); Dkt. No. 125-2 at 2 ("Please know that I will now investigate whether to bring defamation claims against you and

your firm and possibly others for your unfounded, completely untrue allegations.")

The first email in the record regarding settlement is from April 22, 2020. Dkt. 153-2 at 3. Attorney Gillis, representing Defendants, sent an email to Attorney Orlando, representing Plaintiffs, that purported to be "a last/best/final offer to settle the case." Dkt. No. 153-2 at 3. Attorney Gillis offered a settlement of $77,500 divided between the Plaintiffs that would require (1) a global settlement by all three Plaintiffs, (2) a comprehensive confidentiality clause, (3) a "general all-inclusive release" for "all claims and named/unnamed parties including all MLA entities and 93A/176D," and (4) an indemnity agreement. Id. The email also set a deadline of April 27, 2020 for Plaintiffs' response.

On April 29, 2020, Attorney Orlando replied that "if $77,500 is it, then there is nothing further to discuss" and made a demand of $300,000. Dkt. No. 153-2 at 6. He also wrote that he would not negotiate a global settlement, but rather each Plaintiff must be permitted to consider settlement offers separately. Attorney Gillis replied later that day that the monetary demand was impossible given the insurance policy limit but that he could "see recommending no confidentiality clause if it's a true sticking point." Dkt. No. 153-2 at 5. Attorney Gillis followed up with an email the next day about the

insurance policy limit and the possibility of offering a
settlement only to the estate of Sutherland while litigation
proceeded as to the other two Plaintiffs.

On May 6, 2020, Attorney Gillis sent another email that
purported to be "final offers to settle" the case. Dkt. No. 153-
2 at 8. The Defendants' new offer was for $105,000 total, with
$100,000 for Sutherland's estate and $2,500 each for Lane and
Palmer. The offer (1) did not require global settlement, i.e.
each Plaintiff could accept or reject it individually, (2) had
no confidentiality clause, (3) required a "full and complete
general release of all claims, including 93A/176D, and
entities," and (4) had a "limited shelf life" although no
specific deadline was set. Id. The record does not show how, if
at all, Attorney Orlando responded.

Six days later, on May 12, 2020, Attorney Gillis wrote
again to Attorney Orlando, "I've got $120,000 for all claims and
nowhere else to go for more." Dkt. No. 145-2 at 1. Two days
later, on May 14, 2020, Attorney Orlando replied: "$120,000 is
accepted. Palmer accepts $10,000. Lane accepts $10,000. The
estate accepts $100,000. The releases will include the 93A case,
but no confidentiality." Id. at 3. Twelve minutes later,
Attorney Gillis responded in full, "Excellent, that's great.
I'll order the checks. You should be on them with the clients I
assume? I'll draft releases and get them to you. Let me know

what you want to do with the court – a Notice of Settlement followed by Stip of Dismissal?" Id. Attorney Orlando replied, "Send to me what you propose and I'll review." Id.

Attorney Gillis ordered the settlement checks from the insurer and, on May 15, 2020, he sent Attorney Orlando proposed releases for the three Plaintiffs to sign. The proposal, which Attorney Gillis asserts used boilerplate language, releases all claims arising from the December 3, 2015 "incident" against Philip Powell, the Foxy Lady, MLA, and "their respective masters, charterers, owners, captains, crew, officers, directors, stockholders, trustees, beneficiaries, heirs, agents, subsidiaries, parent entities, affiliates, predecessors, successors, insurers, employees, servants, attorneys, assigns, suppliers, distributors, vendors, divisions, [and] representatives." Dkt. No. 153-7 at 4 (emphasis added). On May 19, 2020, Attorney Orlando wrote to Attorney Gillis:

> The content of the releases that [you] sent to me for my clients to sign looks fine . . . . We have a remaining problem, however before my clients can sign the releases and that is the claims that were threatened against my clients and me, as well as the ongoing activity of Sooky Sawyer. One thing I'd like to avoid is further litigation (something I'm sure we can all agree on), so I'm drawing up a release that I'd like Mr. Powell and MLA/MLA Fisheries Services Corp./MLA non-profit reps to sign, as well. I'll get it over to you by tomorrow for your review.

Dkt. No. 145-3 at 1. Attorney Gillis responded that releases of the attorneys were not part of the agreed-upon settlement,

writing, "The deal is done. . . . We don't get to leverage the case for our own security. By proposing new elements to an already done deal you are putting your clients' settlements at risk." Dkt. No. 145-4 at 2. The next day, on May 20, 2020, Attorney Orlando wrote that "Continued settlement talks (about the content of the release) hinge on a total resolution of all claims, both pending and planned." Dkt. No. 145-4 at 1.

Five days later, on May 26, 2020, Defendants filed the present motion to enforce the settlement purportedly reached on May 14, 2020. Dkt. 144.

## MOTION TO ENFORCE SETTLEMENT

### I.   Legal Standard

A district court can "summarily enforce [a settlement] agreement, provided that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." Fid. & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008). "When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues." Id. The party seeking to enforce an agreement bears the burden of "proving the existence of a contract." See Moore v. La-Z-Boy, Inc., 639 F. Supp. 2d 136, 140 (D. Mass. 2009).

"[T]o create an enforceable contract, there must be agreement between the parties on the material terms of that

contract, and the parties must have a present intention to be bound by that agreement." <u>Situation Mgmt. Sys., Inc. v. Malouf, Inc.</u>, 724 N.E.2d 699, 703 (Mass. 2000). A term is material if it is "an essential and inducing feature of the contract." <u>D'Agostino v. Fed. Ins. Co.</u>, 969 F. Supp. 2d 116, 130 (D. Mass. 2013) (citation omitted). "[W]hether a term is material should be judged in the specific context of all relevant facts and circumstances." <u>Sibcoimtrex, Inc. v. Am. Food Grp., Inc.</u>, 241 F. Supp. 2d 104, 109 (D. Mass. 2003).

A "meeting of the minds occurs when there is an offer by one party and an acceptance of it by the other." <u>Sea Breeze Estates, LLC v. Jarema</u>, 113 N.E.3d 355, 360 (Mass. App. Ct. 2018) (cleaned up). However, "[a] reply to an offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." <u>D'Agostino</u>, 969 F. Supp. 2d at 130 (quoting Restatement (Second) of Contracts § 59 (1981)).

## II.  **<u>Analysis</u>**

Plaintiffs do not dispute that they reached an agreement regarding the dollar amount of the settlement, the absence of a confidentiality provision, and the release of threatened Chapter 93A/176D claims against Defendants' insurer. However, Plaintiffs argue that any release of claims must also cover all future claims arising out of litigation conduct, including defamation

claims against attorneys or claims involving the expert witness, and that the failure to reach an agreement on that point precluded a meeting of the minds. Defendants argue that the Court should fill in a "standard" release that does not cover attorneys, witnesses, or other non-parties besides Defendants' insurer.

The Court begins by determining when — if ever — an offer was accepted that was not conditioned an any additional terms. The offers extended by Defendants on April 22 and May 6 were not accepted by Plaintiffs. Defendants extended another offer on May 12, 2020 of $120,000 with no other terms attached. Although Attorney Orlando called the offer "accepted," his May 14, 2020 email constituted a counter-offer because it added additional material terms, namely that the "releases" would "include the 93A case, but no confidentiality." Dkt. No. 145-2 at 3. When Attorney Gillis agreed to the added terms, writing "Excellent, that's great. I'll order the checks," a meeting of the minds was reached. Id. Upon Attorney Gillis' acceptance of the counter-offer, Attorney Orlando no longer had the power to propose additional material terms, such as a release for attorneys.

Plaintiffs argue a broader release was nonetheless a material term of the contract based on the negotiation history. Whether the scope of a release is a "material term" depends on the facts of the case. See United States ex rel. Allen v. Alere

<u>Home Monitoring, Inc.</u>, 355 F. Supp. 3d 18, 22-25 (D. Mass. 2019) (finding "no enforceable agreement" after "the three parties to the settlement negotiations had not and could not mutually agree to the scope of the release" because "the release was a material term" where Defendants' counsel had said during negotiations his "primary concern relate[d] to the scope of the release").

Plaintiffs argue a global release that would include potential defamation claims against counsel was a material term because it had been included in the April 22 and May 6 offers from the Defendants. To start, the releases in those offers never mentioned new claims against counsel or future claims beyond the Chapter 93A/176D demand. The April 22 offer requires a "general all-inclusive release" that would "fully encompass all claims and named/unnamed parties, including all MLA entities and 93A/176D." Dkt. No. 153-2 at 3. The May 6 offer requires a "full and complete general release of all claims, including 93A/176D, and entities." Dkt. 153-2 at 8. The only "claims" in existence at the time of these offers were the ones in this lawsuit and in the Chapter 93A/176D demand letter sent to Defendants.

Furthermore, these releases were not incorporated into the May 14, 2020 counter-offer and acceptance. The course of negotiations shows that the terms proposed on April 22 and May 6 were subject to further discussion. For example, the April 22

offer insists upon a confidentiality clause, but Defendants
later agreed to exclude a confidentiality provision. The April
22 offer also required a "global settlement" by the three
Plaintiffs while the May 6 offer allowed each Plaintiff to
accept or reject the offer individually. The precise terms of
the April 22 and May 6 offers cannot be binding on a later
agreement when they were not accepted and so, by definition,
remained subject to negotiation.

At best, the April 22 and May 6 offers show that some
agreement on the scope of the release was material to the
parties. But it was Plaintiffs' counsel who described the scope
of the release in the May 14, 2020 email exchange, writing, "The
releases will include the 93A case, but no confidentiality."
Dkt. No. 145-2 at 3. While Plaintiffs' counsel may subjectively
have intended to also cover all potential claims arising out of
the case, including against his law firm, a party's "subjective
intent is irrelevant when [he] knows or has reason to know that
[his] objective actions manifest the existence of an agreement."
T.F. v. B.L., 813 N.E.2d 1244, 1249 (Mass. 2004). Plaintiffs'
reference to a release that would "include the 93A case"
objectively manifested an agreement to release all present
claims and the threatened Chapter 93A/176D claim in exchange for
$120,000 for the Plaintiffs and no confidentiality provision.

Any further releases of possible future claims were not included in Plaintiffs' counter-offer.

Finally, Plaintiffs argue that Defendants should not be permitted to exclude attorneys from the scope of the release when Attorney Gillis himself sent a release that included "attorneys" of the Defendants. <u>See</u> Dkt. No. 153-7 at 4. Attorney Gillis asserted at hearing that the language was included in a boilerplate list of parties associated with Defendants and that he removed it in later proposed releases.

<b><u>ORDER</u></b>

Defendants' motion to enforce the settlement reached on May 14, 2020 [Docket No. 144] is <b><u>ALLOWED</u></b>.

The terms of the settlement are as follows: (1) Defendants shall pay $100,000 to the estate of David Sutherland, $10,000 to Richard Lane, and $10,000 to Richard Palmer; (2) Parties shall sign a full and complete release of all present claims, as well as potential 93A/176D claims against Defendants' insurer; (3) No confidentiality provision shall be included in the release.


SO ORDERED.


/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge